## Commonwealth v. Albaugh.

*W. J. Geary*, District Attorney, for Commonwealth.
*Samuel Wilson* and *John M. Myers*, for defendant.

HARVEY, J., March 30, 1929.—On Jan. 15, 1929, J. G. C. Seigworth made information before John B. Fescemyer, a justice of the peace of Clarion County, against A. W. Albaugh, charging that he, A. W. Albaugh, did trespass on his lands in Farmington Township, in Clarion County, by wilful entry on said lands four times, averring the said lands were posted according to law (Act of April 14, 1905).

On the same day a warrant for the arrest of A. W. Albaugh was issued. On Feb. 20, 1929, a hearing was held before Justice Fescemyer, and A. W. Albaugh, defendant, was found guilty of trespassing and fined $10 and costs amounting to $10.05.

On March 1, 1929, a petition presented for special *allocatur* to appeal from the judgment of the justice into the Court of Quarter Sessions of the county and the same allowed. Defendant to enter bail in the sum of $100, conditioned for any fine and costs that might be imposed upon him. Bail-bond filed.

The matter came on for hearing March 16, 1929.

Copy of the docket entries of the hearing before Justice of the Peace John B. Fescemyer presented.

Motion to quash the appeal before hearing filed by W. J. Geary, District Attorney, averring that no sufficient reasons are set forth in the petition for

the allowance of the appeal. That no due cause is shown for the allowance of the appeal, in that:

1. The petition does not set forth that the defendant did not have an opportunity to fully and fairly present his case before the justice.

2. The petition does not set forth that there was a doubtful legal question involved.

3. The petition does not set forth or indicate oppression, corruption or disregard of the law on the part of the magistrate.

4. The petition does not set forth that the defendant has "after-discovered evidence" which would justify the granting of a new trial under the well-known rules relating to the granting of a new trial for cause.

Examination of the records of the justice in this matter reveals defects which, if said records were brought into court upon *certiorari*, we should have been compelled to reverse the judgment. Defendant elected to appeal. This he had a right to do "upon cause shown," upon allowance of the Court of Quarter Sessions of the county, providing satisfactory bail is entered (Act of April 1, 1925, P. L. 98). Allowance for the appeal was granted upon the petition of defendant containing averments which appeared sufficient. We might have refused an appeal, but "it would serve but little purpose to refuse an appeal in a case which could be reversed for lack of jurisdictional averments and facts on *certiorari:*" Com. *v.* Ferree, 6 Dist. R. 639."

A careful examination of the certified copy of the justice's records of the hearing in this matter contains no definite facts, but only a conclusion from unrecorded facts and seemingly a finding upon something not contained in the information. The fact, averred in the defendant's petition, that the defendant was an agent of the Department of Agriculture of Pennsylvania and was specially commissioned to enforce the Act of May 11, 1921, P. L. 522, and its amendments, known as the "Dog Law," and was upon the premises of Mr. Seigworth in what he conceived the due performance of his official duties, and the specific manner in which he trespassed, is not shown in the certified copy of the justice's records.

We feel that the principle set out in Com. *v.* Nesbit, 34 Pa. 398, applies in this case, viz.: "When the record contains no definite facts, but only a legal conclusion from unrecorded facts, a superior court cannot, without compelling a return of the evidence or taking testimony of what it was, decide whether the legal conclusion, that is, the conviction of the offense, be right or wrong."

We sustain reasons 1, 3 and 4 in the motion of the district attorney to quash the appeal.

Irrespective of what appears as a finding in making up the justice's conclusions extraneous to the charges in the information upon which the hearing was held, it does not appear in the record, and we believe we should know, whether or not the fact that the defendant was an official of the State, in the performance of his official duties when the alleged trespass was committed on the premises of Mr. Seigworth, was presented at the hearing. It may have been. The petition of the defendant does not state it was not. If it was not, we feel that it should have been. If it was and the justice disregarded it, is it a question upon which the defendant might predicate an appeal? The petition of defendant contends that it is. We believe it is.

Reason 2 in motion to quash is overruled. Motion to quash appeal overruled and refused.

At the hearing before us on the appeal, the Commonwealth called several witnesses. Mr. Seigworth, the prosecutor, testified, in substance, that he owned a farm containing about 120 acres in Farmington Township, Clarion

County, Pennsylvania, upon which he resides. That on Jan. 17, 1927, he was at a point on the farm some distance from his residence house. That during his absence two men came to his house. That they were there a short time, turned and went across his fields to where they had an automobile in the lane leading from the public road. They had difficulty in getting the car turned around, one of the men went across his field and got a wooden bar or rail with which to lever the car. This bar or rail was broken into several pieces and the pieces allowed to lie where the car was stationed. He testified that there had been a fall of snow the morning of that day and he could and did trace the footprints of these two men. That they got out of the car where it was on the lane or roadway and walked across a field diagonally about forty rods, which he said was "seeded down," to the house and barn, and returned across the same field; also across the field to procure the bar or rail. That he saw them go away over a hill in the direction of where a neighbor lived. That they returned and he recognized the men, one of whom was the defendant herein. The material damage done was walking across the field and breaking the bar or rail. He further testified that he had ten cards as notices posted on the outer limits of his farm, one of which was at the point where the private lane or roadway left the public road; others along the lane and on the other edge of lands. These notices were printed on cardboard about seven inches by eleven inches in size. "No hunting" in large letters at the top of card, followed in smaller type, "All persons are warned from trespassing hereon, etc.," signed "J. G. C. Seigworth," owner. One notice bore "No Trespassing" over the letters "No Hunting," testified to have been placed at a certain point to warn persons against going upon the adjoining lands with wagons or vehicles when the lane or roadway was in bad condition. That the last-mentioned notice was not at the end of road or lane where defendant and companion entered the lane. William Allebaugh and Floyd Smith, witnesses for prosecutor, testified to having seen the notices against hunting and trespassing on the Seigworth lands prior to Jan. 17, 1927, and that the same were posted as testified by Mr. Seigworth prior to and on that date. L. B. Host, a witness for prosecutor, testifies that he saw the "no hunting" signs prior to Jan. 17, 1927; that he was hunting deer and seeing the signs refrained from going upon the land. Did not see the special "No Trespassing" sign mentioned.

The defendant testifies: That he is agent for the State Department of Agriculture in the district of Clarion, Venango, Forest and Jefferson Counties for the enforcement of the law of May 11, 1921, P. L. 522, known as the "Dog Law." That he was charged with the general enforcement of this law (section 35), and in pursuance of his duties thereunder he was at Lickingville, in the vicinity of the farm of Mr. Seigworth, on Jan. 17, 1927; that he heard Mr. Seigworth had several dogs; went with Mr. Guilford, Game Warden in the district, in an automobile to call upon Mr. Seigworth; that they got along the public road to the end of the lane going to Mr. Seigworth's residence house, turned into the lane, but only got part of the way when the auto was so impeded with snow drifts in the lane or roadway they were required to get out of the car and walk the remaining distance to the house; that they "cut across" a field to the house, possibly a distance of forty rods; that there was snow on the ground; that they heard dogs barking and found dogs in the barn; that they returned across the field about as they came to where the car was left standing in the lane or roadway; that they had difficulty in getting the car turned around, but did so and went back along the lane or roadway until they came to the public road; that he does not recollect

of breaking a bar or rail in efforts to get the car turned around, but may have done so; that he did not see any notices against trespassing posted on the Seigworth's land.

There is no question but that the defendant "entered" upon the lands of Mr. Seigworth and walked across a portion thereof to the residence house and barn on the lands.

There is also no question but that the lands were posted in the manner testified. Had these men been "hunters" and had entered upon the lands wilful, that is, with the purpose to hunt, whether they went on the land one rod, forty rods or any number of rods, shot anything or not, or did any damage or not, they would have been unquestionably trespassers and subject to the penalties of the act. It may be drawing a fine distinction, but is the notice testified as posted, which might have been seen by defendant when he entered the lane from the public road, such a notice as would have warned him or any one not a hunter from going upon the land as defendant did. The prosecutor himself testified, and brings in the notice to corroborate, that he changed the form of the notice where he wanted those who were not hunters to keep off his premises. Be that as it may, the defendant, an officer of the State, being "employed by this Commonwealth, . . . whose duty it is to enforce the law" (Act of May 11, 1921, § 2, P. L. 522), in pursuance of his official duties, proceeding along a road used by the public without hindrance, comes to a place where he can proceed no further because of the road being blockaded with snow, gets out of the automobile in which he is traveling and strikes across the field on foot to his objective, the lands being "posted" as testified; when he arrives at the residence house, finding no one and hearing dogs bark, he goes to a building near, a barn, opens a door and find dogs, is he a trespasser at any time or place after stepping from the automobile stalled in the lane until he returned to it, got it turned around and departed from and off the Seigworth lands? Counsel for defendant contend that as an officer of the Commonwealth, empowered generally to enforce the "Dog Law," he has lawful authority by virtue of his commission, without other warrant, to go upon lands and premises for the purpose of inquiring and investigating whether or not dogs have been assessed and a license issued for them according to law, with the right to enter closed buildings to that end in the due pursuit of his official duties.

The district attorney contends that the instant defendant left the lane used by the public and stepped upon, i. e., "entered upon," the lands of Mr. Seigworth, posted as testified they were, he was a trespasser; that had defendant proceeded and followed the lane around to the house and returned the same way, he would not have been a trespasser. This argument with respect to the charges in the information not extending to where buildings are entered without proper warrant.

The justice in his findings at the hearing Feb. 20, 1929, notes "open building without a search warrant." That is a factor not contained in the information.

It seems to be an element taken into consideration by the justice in arriving at his judgment and sentence. The testimony must have been introduced at the hearing before the justice, Feb. 20th; otherwise, how would the attention of the justice, from anything in the information, been brought to that point to the extent of the findings and judgment stated in the record. It was practically on this point the appeal was allowed.

In the Dog Law of May 11, 1921, P. L. 522, we find:

1. That "any person employed by the Commonwealth, . . . whose duty it is to enforce the law," is defined as a police officer. (Section 2.)

2. That "on or before the fifteenth day of January of each year, . . . the owner of any dog six months old or over shall procure a license for each dog owned or kept by him. . . ." (Sections 3 and 18.)

3. Kennel licenses issued, the fee dependent upon the number of dogs kept in the kennel. (Section 11.)

4. It shall be the duty of every police officer (section 19) :

(a) To seize and detain any dog or dogs which bear a proper license tag and which are found running at large, either upon the public streets or highways of the Commonwealth or on the property of other than the owner of such dogs and unaccompanied by the owner or keeper.

(b) Any police officer is authorized and empowered to go upon any premises and enter any building to seize and detain any dog or dogs which have been found running at large, unaccompanied by the owner or keeper, when such police officer is in immediate pursuit of any such dog or dogs.

5. That the assessors for taxation purposes in each township, borough, etc., shall annually, at the time of assessing property as required by law, make diligent inquiry as to the number of dogs owned, harbored or kept by each person in his district; make a complete report to the Secretary of Agriculture, . . . setting forth the name of every owner of any dog or dogs, . . . how many of each sex; . . . if a kennel is maintained, such fact be stated. Duty of assessor to notify owner that a license must be obtained. (Section 17.)

Careful examination and consideration of the act leads to the belief that the powers with which the agents of the Secretary of Agriculture are invested to enforce the law are analogous to and rise no higher than the powers with which police enforcement and peace officers are vested, namely, the "violators" may be "arrested" "on sight," if seen or found violating the provisions of the act, and may be pursued till captured, even upon the premises and into the buildings of the owner. If, however, any one reported as owner of a dog or dogs fails to procure a license for it or them; if a dog is reported as running at large with or without a license tag; or if, upon information and belief, there may be a dog or dogs unlawfully harbored, owned or kept, not reported by the assessor, the license or licenses not procured; also, unless the officer is in immediate pursuit of the dog or dogs seen in violation of the provisions of the act, we are constrained to hold, and do hold, that an officer may not enter upon the lands and premises of the owner or keeper of the dog or dogs pursuant to his official duties to enforce the law without a lawful warrant specifically authorizing him for so doing under the provisions of the act for the purpose or procured by due process of law. To hold otherwise would be dangerously near being contrary to article IV, Amendment of the Constitution of the United States. In this view we feel sustained from the fact that in the act specific provisions are set out authorizing and empowering "police officers" to act summarily on sight under certain conditions, and is silent upon all others, leaving process to be under the common law.

We may have digressed from matters upon which this case might be decided. It is done because of the averments and arguments of counsel relative to the rights, powers and authority of the defendant, as an officer of the Commonwealth of Pennsylvania, in the performance of his official duties. In the instant case, the information upon which the case is based charges only "the aforesaid A. W. Albaugh did trespass on the lands of the plaintiff in Farmington Township, aforesaid county, wilfully did enter on said lands at four different times against the Act of Assembly, the 14th day of April, A. D.

1905. Said lands being posted according to law." (Not signed by the prosecutor.)

The matter was heard by the justice, who rendered a verdict, *inter alia*, "it was shown that A. W. Albaugh did trespass and open building without a search warrant," upon which he was sentenced. Appeal taken on allowance granted. At the hearing before the court, the district attorney confined the testimony for the Commonwealth strictly to the charge contained in the information, that the defendant was a trespasser upon the lands; that the lands were "posted" in accordance with provisions in the Act of April 14, 1905, P. L. 169, and contended that a simple entry upon the lands so posted constituted a trespass. Counsel for the defendant sought by the testimony presented to establish that defendant did not see any notice warning against trespassing, if any were posted; that he was an agent of the Secretary of the State Department of Agriculture, and as such had authority to enter upon lands in the pursuit or performance of his official duties; that he was going to see Mr. Seigworth; that he got part way on a lane used by the public for travel; that he was stopped by impassable conditions in the roadway; got out of the auto and continued his journey across the fields on foot, that being the only practicable manner, and across the fields the only practicable course, to reach the residence house of Mr. Seigworth.

Plaintiff, by testimony, established the fact that Mr. Seigworth had "prominently posted" his land with "No Hunting" signs, but same had further upon them printed a warning to "All persons" against trespassing, under the Act of April 14, 1905.

In order to determine the status of this defendant on entering upon the lands of Mr. Seigworth under the circumstances in this case, we must take into consideration what a "trespasser" is under the law; whether the lands were prominently posted as "private property" and warning all persons from trespassing thereon. Also, whether the defendant did "wilfully enter" upon the land. This is a matter under a statute, not a civil case for damages.

"Civil" trespass upon lands is defined as "any unauthorized entry upon the realty of another to the damage thereof."

"Every unauthorized entry on land of another is a trespass, even if no damage is done, or the injury is slight. It will be presumed that injury resulted, even if it was no more than the trampling of the herbage: . . ." 38 Cyc., 995-1.

At common law, no trespass to property is a crime unless it is accompanied by or tends to create a breach of the peace.

Under statutes, many civil trespasses have been made criminal. The purpose is to protect the actual possession of real estate against unlawful and forcible invasion and to remove occasion for acts of violence and breach of the peace. The act must involve a common law trespass. It is not the purpose of the statutes to make that a criminal trespass which would not be a civil trespass: 38 Cyc., 1176 B.

In this case, the use of the lane for passage, the same being open and permitted for public use, was not a trespass.

Defendant had come to a point where he could go no further in his automobile. He had come to see Mr. Seigworth. He was within some forty rods of his residence. What was he to do? Go back as he came and return after the snow-drifts were out of the road, or get out of his automobile and walk across the fields to the house. He got out and walked across the fields and came back to the auto the same way. He says that he did not see any signs warning against trespassing. Does the qualifying word "wilfully" in the

expression "wilfully to enter" in the act have significance? We think it does under the circumstances in this case. To enter "wilfully" upon the land, he must know the act is forbidden, and nevertheless proceed to enter.

"The word 'wilful,' used in a statute creating a criminal offense, means something more than an intention to do a thing. It implies the doing of the act purposely and deliberately, indicating a purpose [on the part of the defendant] to do it without authority; careless whether he has the right or not; in violation of law; and it is this which makes the criminal intent, without which one cannot be brought within the meaning of a criminal statute:" State v. Morgan, 48 S. E. Repr. 670; 38 Cyc., 1181 B, 1177 (IV), 1179 C, 1180 (11).

Under all the facts presented in this case, taking into consideration the situation of the defendant, the exigencies, that he did not know the land was "posted," and, therefore, was not consciously aware he might be a trespasser by entering upon the lands of Mr. Seigworth as he did; that even if he had seen the notice posted at the junction of the lane with the public road, whether it was such a notice as is contemplated under the Act of April 14, 1905, is not established, we are of the opinion that the defendant may not be held criminally liable as a trespasser for entering upon the lands of the prosecutor in the manner and under the circumstances he did Jan. 17, 1927, as charged in the information made Jan. 15, 1929, upon which the proceeding was originally brought before Justice of the Peace John B. Fescemyer. In the information, four different entries are charged; only one entry was pressed and testimony taken thereon at the hearing before us on the appeal.

And now, March 30, 1929, after hearing the testimony and the arguments of counsel, upon careful and due consideration thereof, for the reasons set out above, we find A. W. Albaugh, the defendant, not guilty of the charge in the information made against him Jan. 15, 1929, for trespass by entering upon the lands of the prosecutor, J. G. C. Seigworth, Jan. 17, 1927. The results of and questions raised in this case being of public concern, we direct that all docket costs in the prosecution thereof be paid by the County of Clarion, Pennsylvania.                      From Merritt H. Davis, Clarion, Pa.